UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROLAND PIZAN and LILIA PIZAN,

    Plaintifs,

v.

HSBC BANK USA, N.A. AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF DECEMBER 1, 2006, FREMONT HOME LOAN TRUST 2006-E, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., QUALITY LOAN SERVICE CORP. OF WASHINGTON,

    Defendants.

C11-26Z

ORDER

THIS MATTER comes before the Court on plaintiffs' motion for temporary restraining order ("TRO"), docket no. 18, as amended, docket no. 44, and motion for leave to amend complaint, docket no. 33. By Minute Order dated June 16, 2011, docket no. 46, the Court granted both motions. In issuing the TRO, the Court required that plaintiffs deposit into the Court's Registry the sum of $60,342.29, which represents the amount in arrears as of July 22, 2009. After issuance of the Minute Order, plaintiffs filed an "emergency motion for declaratory judgment," asking that the monetary figures be verified before plaintiffs deposit

ORDER - 1

the sum into the Court's Registry.  The Court TREATS plaintiffs' emergency motion, docket no. 50, as a motion for reconsideration pursuant to Local Rule CR 7(h), and DIRECTS defendants to file any response on or before July 1, 2011.  No reply shall be filed unless requested by the Court.  Plaintiffs' emergency motion is NOTED for July 1, 2011.  The condition that plaintiffs deposit $60,342.29 into the Court's Registry is hereby STAYED until further order of the Court.  With respect to plaintiffs' motions for leave to amend complaint and for TRO, which the Court granted by Minute Order, docket no. 46, the Court now explains its reasoning.

**Background**

In this action, plaintiffs seek to forestall the non-judicial foreclosure of a deed of trust on their residence located at 7912 Delridge Way in Seattle.  The deed of trust evidences a security interest relating to a promissory note in the principal amount of $310,000, with interest accruing at an adjustable rate between 10.1% and 16.1% annually.  Adjustable Rate Note (docket no. 13-1).  The deed of trust was executed in October 2006 by plaintiffs Roland Pizan and Lilia Pizan, each unmarried, in favor of Fremont Investment & Loan, with TransUnion Title Insurance designated as trustee.  Deed of Trust (docket no. 13-2).  In July 2009, Quality Loan Service Corporation of Washington ("QLS Corp.") was appointed as successor trustee.  Appointment of Successor Trustee (docket no. 13-4) (dated July 23, 2009, notarized July 27, 2009, recorded July 31, 2009).  A little over a year later, in August 2010, the deed of trust was assigned to HSBC Bank USA, National Association ("HSBC Bank").  Assignment of Deed of Trust (docket no. 13-5) (dated and notarized August 25, 2010, recorded September 24, 2010).  Both the appointment of QLS Corp. and the assignment to HSBC Bank were executed by Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Fremont Investment & Loan and as beneficiary of the deed of trust.

On a date prior to its appointment as successor trustee, and prior to the recording of such appointment, QLS Corp. issued and served a notice of default, advising plaintiffs that the beneficiary (MERS) had declared a default due to failure to make payments from January 1, 2008, through July 22, 2009, that the total amount in arrears, including late fees and other charges, was $60,342.29, that the beneficiary had elected to accelerate the loan, making the entire principal balance immediately due, and that the property could be sold at public auction after the passage of 120 days. Notice of Default (docket no. 13-3) (dated and served July 22, 2009). The notice of default also stated, "THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." *Id.* at 3.

On December 17, 2010, QLS Corp. recorded a Notice of Trustee's Sale, listing March 25, 2011, as the date of public auction. Notice of Trustee's Sale (docket no. 13-6). The trustee's sale was continued one or more times pursuant to RCW 61.24.040(6), and plaintiffs were served with written notice of postponement to June 17, 2011. Certificate of Service (docket no. 38) (mailed June 2, 2011). Shortly before being served with the Notice of Continuance of Trustee's Sale, plaintiffs filed a motion for TRO, seeking to enjoin the public auction. At that time, the operative complaint alleged subject-matter jurisdiction under 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1332 (diversity). Amended Complaint at ¶ 8 (docket no. 14 at 4).

By Minute Order dated May 31, 2011, docket no. 24, the Court concluded that 12 U.S.C. § 1819(b)(2)(A) does not apply because the Federal Deposit Insurance Corporation is not a party to this action. The Court also expressed doubt about whether diversity jurisdiction exists because QLS Corp. is an indispensable party and a citizen of the same state as plaintiffs. *See* *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff" (emphasis in original)); *see also* *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277-78 (9th Cir. 1980) (citing Fed. R. Civ. P. 19 & 21).

In response to the Court's direction that they show cause why this matter should not be dismissed for lack of subject-matter jurisdiction, plaintiffs proposed to amend their complaint to assert the following claims: (i) mistaken promissory note against all defendants; (ii) erroneous default against all defendants; (iii) invalid debt under the Fair Debt Collection Practices Act ("FDCPA") against QLS Corp.; (iv) erroneous credit reporting in violation of the Fair Credit Reporting Act ("FCRA") against Litton Loan Servicing, L.P. ("Litton"), which is not currently a party to this litigation; and (v) for declaratory relief against Mortgage Electronic Registration Systems, Inc. ("MERS"). Of these five claims, only the FDCPA and FCRA claims rest on alleged federal question, as opposed to diversity, jurisdiction.

Plaintiffs' response was treated as a motion for leave to amend complaint, and defendants were provided an opportunity to respond. <u>See</u> Minute Order (docket no. 39). In separate responses, both the trustee (QLS Corp.) and the beneficiaries (HSBC Bank and MERS; collectively, "Beneficiary Defendants") argued that plaintiffs should not be permitted to amend their complaint to assert a FDCPA claim because QLS Corp. is not a "debt collector" within the meaning of the statute. The Beneficiary Defendants further contended that plaintiffs have no private right of action under the FCRA and that plaintiffs' other proposed claims are not recognized by or cognizable under state law.

**Discussion**

**A.     Leave to Amend**

Leave to amend a pleading should be "freely" given when "justice so requires." Fed. R. Civ. P. 15(a)(2). Such leave may, however, be denied if amendment would be futile. <u>E.g.</u>, <u>Gordon v. City of Oakland</u>, 627 F.3d 1092, 1094 (9th Cir. 2010). The issue in this case is whether, if permitted to file the proposed Second Amended Complaint, plaintiffs will have stated at least one claim upon which federal question jurisdiction may be premised. The Court is persuaded that the requested amendment is not futile.

ORDER - 4

### 1. **Fair Debt Collection Practice Act ("FDCPA")**

In asserting that QLS Corp. is not a "debt collector" within the meaning of the FDCPA, defendants rely on *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188 (D. Or. 2002). *Hulse*, however, has been called into question by two circuits and at least two district courts within the Ninth Circuit. *See Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006); *Albers v. Nationstar Mortg. LLC*, 2011 WL 43584 (E.D. Wash. Jan. 3, 2011); *Allen v. United Fin. Mortg. Corp.*, 2010 WL 1135787 (N.D. Cal. Mar. 22, 2010). Thus, the Court is reluctant to simply rely on *Hulse*, but instead must analyze the question anew.

Under the FDCPA, the term "debt collector" has both a general and a specific definition, as well as six exemptions. The general definition includes any person who uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts or who regularly collects or attempts to collect debts owed or due, or asserted to be owed or due, another. 15 U.S.C. § 1692a(6). The specific definition includes any person who uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the enforcement of security interests. *Id.* A debt collector satisfying the specific definition, but not the general definition, is subject to only one provision of the statute enumerating unfair practices, namely 15 U.S.C. § 1692f(6). *See id.*; *see also Kaltenbach*, 464 F.3d at 529 ("a party who satisfied § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests").

QLS Corp. does not deny that it is in the business of enforcing security interests or that it uses the mails or instrumentalities of interstate commerce in doing so. Thus, for purposes of evaluating whether plaintiffs should be given leave to amend to assert a FDCPA claim against QLS Corp., the Court treats QLS Corp. as meeting the specific definition of "debt collector," making it subject to the requirements of § 1692(f)(6). Section 1692(f)(6)

prohibits the taking or threatening of any "nonjudicial action to effect dispossession or disablement of property" if (i) no present right exists to possession of the property claimed as collateral, (ii) no present intention exists to take possession of the property, or (iii) the property is exempt from such dispossession or disablement.

In light of the various documents submitted by the parties, the Court cannot conclude that plaintiffs have no viable claim that QLS Corp. violated § 1692(f)(6). At the time QLS Corp. issued and served the Notice of Default in this matter, it had not yet been appointed successor trustee. Moreover, although the deed of trust at issue was executed by both Roland Pizan and Lilia Pizan, the record indicates that only Lilia Pizan was named as grantee in the quit claim deed executed by Maria Pizan, formerly known as Maria Cabbab,[1] and that Roland Pizan and Lilia Pizan are not spouses. Quit Claim Deed (docket no. 33 at 24); Deed of Trust (docket no. 33 at 26). Finally, although the Notice of Default was issued in July 2009, the trustee's sale has still not occurred, almost two years later, presenting a question as to QLS Corp.'s intention at the time it threatened non-judicial foreclosure.

QLS Corp. might also qualify as a "debt collector" under the general definition, especially in light of its express acknowledgment in its premature Notice of Default that it was attempting to collect a debt on behalf of MERS. Further examination, however, is required to determine whether one of the exemptions applies. Of the six exceptions to the general definition of "debt collector," the only one potentially applicable is § 1692a(6)(F), which excludes:

> any person collecting or attempting to collect any debt owed or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

---

[1] The quit claim deed was signed on the same day as the deed of trust, namely October 18, 2006. Whether Maria Pizan fka Cabbab had any interest in the property at issue to convey to Lilia Pizan by way of quit claim deed remains unclear.

ORDER - 6

15 U.S.C. § 1692a(6)(F). Because QLS Corp. purported to act on behalf of MERS, and not Fremont Investment & Loan, subsections (ii) and (iv) are not applicable. To the extent QLS Corp.'s activities after assignment of the deed of trust to HSBC Bank are alleged to be in violation of the FDCPA provisions applicable to general definition debt collectors, subsection (iii) would not exempt QLS Corp. because HSBC Bank obtained the debt after it had been declared in default.

Whether subsection (i) might operate to excuse QLS Corp. from all mandates of the FDCPA other than § 1692(f)(6) (improper threats of nonjudicial action) remains uncertain. In considering a similar question with respect to lawyers acting as trustees, the Fourth Circuit focused on one term within subsection (i), holding that a trustee's actions in foreclosing on a deed of trust are not "incidental," but rather "central," to its fiduciary obligation, and that such trustee cannot benefit from the exemption in § 1692a(6)(F)(i). *Wilson*, 443 F.3d at 377 (citing Federal Trade Commission commentary indicating that § 1692a(6)(F)(i) applies to trust departments of banks and escrow companies, but not to "a party who is named as a debtor's trustee solely for the purpose of conducting a foreclosure sale"). *But see Wilson*, 443 F.3d at 380-81 (Widener, C.J., dissenting) ("Even assuming that a foreclosure is "central" to the defendants' duties, the majority conclusion that a central task incident to the duty is not exempted does not follow from the premise. If the exception covers the minor unintended acts relating to incidental fiduciary duties, it must cover the principal acts as well.").

Because QLS Corp. qualifies as a "debt collector" under the specific definition of the term, the Court need not, for purposes of deciding whether plaintiffs should be permitted to amend their complaint, rule on whether QLS Corp. is also a "debt collector" under the general definition and exceptions thereto. The Court grants leave to plaintiffs to amend their complaint to allege a FDCPA claim against QLS Corp., which gives rise to subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question). The Court makes no ruling

ORDER - 7

concerning the merits of this claim or whether injunctive relief (*e.g.*, restraint of trustee's sale) constitutes an available remedy under the FDCPA.

### 2. **Fair Credit Reporting Act ("FCRA")**

With respect to plaintiffs' proposed FCRA claim against a new party, namely Litton, the Beneficiary Defendants assert that Litton is merely a "furnisher" of credit information, as opposed to a credit reporting agency ("CRA"), and that plaintiffs have no private right of action against Litton. They cite <u>Nelson v. Chase Manhattan Mortg. Corp.</u>, 282 F.3d 1057 (9th Cir. 2002), for this proposition, but they apparently did not carefully read the opinion. In <u>Nelson</u>, the Ninth Circuit held to the contrary, observing that the FCRA was amended in 1996 to permit private actions against furnishers. <u>Id.</u> at 1060. Before the amendment, a consumer could sue only a credit reporting agency or user of credit information, but not a furnisher. <u>Id.</u> (citing 15 U.S.C. §§ 1681n & 1681o (1995)). The revised statute makes "any person" open to suit. <u>Id.</u> (citing Pub. L. 104-208 at § 2412, 110 Stat. 3009 at § 2412 (1996)). The <u>Nelson</u> Court questioned "who else except furnishers could Congress have had in mind when it introduced 'any person' into the statute." <u>Id.</u> Having received no answer from counsel in oral argument, the Ninth Circuit concluded that the purpose of the 1996 amendment was "to provide some private remedy to injured consumers," and that the Court's role was not "to remake the balance struck by Congress," which had been "drawn with extreme care, reflecting the tug of competing interests of consumers, CRAs, furnishers of credit information, and users of credit information." <u>Id.</u>; *see also* <u>Howard v. Blue Ridge Bank</u>, 371 F. Supp. 2d 1139, 1143 (N.D. Cal. 2005) ("furnishers may be liable to private litigants under 15 U.S.C. § 1681s-2(b) based on the information they provide to credit agencies" (citing <u>Nelson</u>)). Thus, plaintiffs may add a FCRA claim against Litton. The Court, however, makes no ruling concerning whether plaintiffs have pleaded sufficient facts to survive a motion to dismiss such FCRA claim.

### 3. **Pendent Claims**

The Beneficiary Defendants oppose plaintiffs' motion for leave to amend to allege "mistaken promissory note" and "erroneous default" on the ground that such claims are not based on legal theories recognized under Washington law. Although the titles "mistaken promissory note" and "erroneous default" do not bear resemblance to known causes of action, the Court has a duty to liberally construe a pro se litigant's pleadings, *e.g.*, <u>Byrd v. Maricopa County Sheriff's Dep't</u>, 629 F.3d 1135, 1140 (9th Cir. 2011), and must look beyond the captions to evaluate whether plaintiffs have supplied the essential elements of a cognizable claim.

Under Washington law, a deed of trust is a security instrument involving three parties: (i) the borrower or grantor; (ii) the lender or beneficiary; and (iii) the trustee. <u>See</u> RCW 61.24.005(2), (3), (6), & (13); <u>Vawter v. Quality Loan Serv. Corp. of Wash.</u>, 707 F. Supp. 2d 1115, 1121 (W.D. Wash. 2010). Pursuant to a deed of trust, the trustee holds, on behalf of the beneficiary, an interest in the title to the grantor's real property. <u>Vawter</u>, 707 F. Supp. 2d at 1121. The term "beneficiary" is statutorily defined as "the holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2).

With respect to the deed of trust at issue in this case, the current trustee, QLS Corp., was appointed by a document executed by MERS as nominee for the original lender, Fremont Investment & Loan. In addition, the assignment of the deed of trust to HSBC Bank was signed by MERS, and not by Fremont Investment & Loan. This case therefore raises issues as yet undecided by Washington courts, namely whether MERS may, pursuant to Washington's Deed of Trust Act, serve as the beneficiary of a deed of trust when it does not hold the promissory note secured thereby, and whether MERS may, as nominee for the beneficiary, validly assign the deed of trust or appoint a successor trustee. <u>See Vinluan v. Fidelity Nat'l Title & Escrow Co.</u>, No. 85637-1, Ruling Denying Review at 7-8 (Wash.

ORDER - 9

Apr. 25, 2011), Ex. 2 to HSBC Bank Response to Motion for TRO (docket no. 31-2) ("An appellate court decision on whether MERS can be a proper beneficiary under Washington's Deed of Trust Act would be helpful in resolving lawsuits challenging foreclosure or attempted foreclosures. But this motion [pursuant to RAP 2.3(b)(4)] is not a proper vehicle for deciding that question."); *Gunsul v. Countrywide Home Loans, Inc.*, 2006 WL 3586091 at \*6 n.15 (Wash. Ct. App. 2006) ("Because we remand for trial, we need not reach the issue of whether MERS had the statutory authority to appoint a successor trustee under RCW 61.24.010(2).").

A fair reading of plaintiffs' proposed state law and declaratory judgment claims brings them within the scope of the ongoing debate over the propriety of MERS's role in transactions involving deeds of trust. *See Bain v. OneWest Bank, F.S.B.*, 2011 WL 917385 at \*6 (W.D. Wash. Mar. 15, 2011) (declining to "add even more pages to the legal discourse discussing whether MERS may serve as a beneficiary in deeds of trust" and staying the matter pending the decision in *Vinluan*); *see also In re Agard*, 444 B.R. 231 (Bankr. E.D.N.Y. 2011); *Merscorp, Inc. v. Romaine*, 8 N.Y.3d 90, 99-100, 861 N.E.2d 81 (2006) (Ciparick, J., concurring); *id.* at 100-04 (Kaye, C.J., dissenting in part). Moreover, the Court interprets plaintiffs' demand that QLS Corp.'s Notice of Default be rescinded, *see* Proposed Second Amended Complaint at ¶ 48 (docket no. 33 at 16), as asserting that such document was issued and served before QLS Corp. had been appointed as successor trustee. *Compare Vawter*, 707 F. Supp. 2d at 1126-27 ("Chase conceded that it appointed QLS as successor trustee before MERS assigned its beneficial interest to Chase"). Plaintiffs are granted leave to amend their complaint to allege causes of action arising from premature or defective notice of default, improper appointment of QLS Corp. as trustee, and invalid assignment of the deed of trust to HSBC Bank. The Court views these claims as brought under both Washington's Deed of Trust Act and the Declaratory Judgment Act, 28 U.S.C. § 2201, and as within the scope of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**B.    Temporary Restraining Order**

Preliminary injunctive relief requires a party to demonstrate (i) a likelihood of success on the merits, (ii) a likelihood of irreparable harm in the absence of preliminary relief, (iii) a balance of equities tipping in favor of relief, and (iv) a weighing of public interest that supports an injunction. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). Courts employ a substantially identical analysis when addressing a motion for a temporary restraining order. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Washington's Deed of Trust Act authorizes the Court to restrain a trustee's sale on "any proper legal or equitable ground." RCW 61.24.130(1). The statute does not further elucidate what constitutes a proper ground for restraint of a trustee's sale, but one commentator has suggested a number of legal theories, including violation of truth in lending laws, fraud, usury, and substantive (as opposed to technical) flaws in the foreclosure process. *Vawter*, 707 F. Supp. 2d at 1122 (citing 27 Marjorie Dick Rombauer, WASH. PRAC.: Creditors' Remedies – Debtors' Relief § 3.62 (2008)).

Given the unsettled nature of MERS's status as deed-of-trust beneficiary and the arguably substantive defects in the foreclosure proceedings to date, as well as the irreversible effects of a trustee's sale and the waiver consequences to plaintiffs if foreclosure is not enjoined, *see* RCW 61.24.127, the Court was and is still persuaded that the relative equities warrant a temporary restraining order. Whether such TRO must be conditioned upon deposit into the Court's Registry of the sums due on the obligation secured by the deed of trust remains uncertain. Defendants are DIRECTED to address this issue in their responses to plaintiffs' "emergency motion," treated as a motion for reconsideration, with particular focus on whether and to what extent any amounts must be paid as a condition for restraint of a trustee's sale if the prerequisites for such sale have not been satisfied.

**Conclusion**

For the foregoing reasons, the Court previously granted plaintiffs' motion for leave to amend complaint, docket no. 33, and motion for TRO, docket nos. 18 & 44. The Court hereby further ORDERS:

(1) Defendant QLS Corp.'s motion to dismiss the first amended complaint, docket no. 32, is STRICKEN as moot;

(2) Plaintiffs' emergency motion for declaratory judgment before depositing funds, docket no. 50, is treated as a motion for reconsideration and is NOTED for July 1, 2011, with responses due on the noting date;

(3) The TRO imposed by Minute Order dated June 16, 2011, docket no. 46, as modified by this Order, is EXTENDED until July 8, 2011; the Court's prior condition that plaintiffs deposit the amount in arrears into the Registry of the Court is STAYED pending further order of the Court; and

(4) Plaintiffs' motion for preliminary injunction, docket no. 19, is RENOTED to July 8, 2011, to permit defendants additional time to respond in light of this Order; defendants' responses are due by noon on July 5, 2011, and shall be served on plaintiffs via e-mail, facsimile, personal delivery, or other means reasonably calculated to reach plaintiffs at or before the time the responses must be filed with the Court; any reply by plaintiffs must be received by the Court at or before noon on July 7, 2011.

IT IS SO ORDERED.

The Clerk is directed to send a copy of this Order to all counsel of record and to plaintiffs pro se via both e-mail and U.S. mail.

DATED this 23rd day of June, 2011.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER - 12